UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| Lucky Egg Limited<br><br>    Plaintiff,<br><br>v.<br><br>The Individuals, Business Entities, And Unincorporated Associations Identified on Exhibit 1<br><br>    Defendants | Civil Action No.   4:25-cv-1174 |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Lucky Egg Limited asserts its claims against the Defendants in the attached Exhibit 1, and alleges as follows:

**PARTIES**

1.    Plaintiff Lucky Egg Limited is a United Kingdom Limited Liability Company with an address at 30 Brewer Street, London, UK W1F 0SS.

2.    The currently-known Defendants are comprised of individuals, business entities of unknown makeup, or unincorporated associations, each of whom, on information and belief, likely reside or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations, including those identified by name or alias on the attached Exhibit 1 (collectively, "Defendants").

3.    Defendants operate through domain names and interactive commercial webstores (the "Infringing Webstores") hosted on various e-commerce platforms, such as Alibaba, AliExpress, Amazon, DHGate, eBay, Fruugo, Shein, Shopify, Temu, and Walmart (the "Marketplaces").

1

4. Defendants offer their products for sale to consumers in the United States, including this District, and, on information and belief, have sold and continue to sell products (the "Infringing Products") which violate Plaintiff's intellectual property rights to consumers within the United States, including within Texas and the Eastern District of Texas.

5. Through their illegal operations on the Infringing Webstores, Defendants are directly and personally contributing to, inducing, and engaging in the sale of Infringing Products, and on information and belief, are doing so often as partners, co-conspirators, or suppliers.

6. On information and belief, Defendants are an interrelated group working in concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

7. Defendants conceal their identities and the full scope of their infringing operations to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' infringing operations. The true identities of many of these Defendants are presently unknown.

## JURISDICTION & VENUE

8. This is an action for trademark infringement and counterfeiting under 15 U.S.C. § 1114 and copyright infringement under 17 U.S.C. § 501.

9. This Court has subject-matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this is an action arising under the laws of the United States and relating to trademarks and copyrights.

10. This Court has personal jurisdiction over Defendants because each Defendant has, through one or more fully interactive commercial Internet websites, pursued sales from Texas residents by offering shipping to Texas, *see* Exhibit 2, and, on information and belief, has induced sales of Infringing Products to residents of Texas in violation of Plaintiff's intellectual property rights. As such, personal jurisdiction is proper because each Defendant is committing infringing acts in Texas and has wrongfully caused Plaintiff substantial injury in the State of Texas.

11. This Court also has personal jurisdiction over Defendants because Plaintiff's claims arise under federal law; the Defendants are, on information and belief, not subject to jurisdiction in any state's courts of general jurisdiction; and exercise of such jurisdiction is consistent with the United States Constitution and laws. Fed. R. Civ. P. 4(k)(2).[1] Personal jurisdiction is thus also proper pursuant to Rule 4(k)(2) because each of the Defendants directs its activities at residents of the United States and the State of Texas.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendants are entities or individuals subject to personal jurisdiction in this District, and Defendants not residing in the United States may be sued in any judicial district.

### PLAINTIFF'S INTELLECTUAL PROPERTY & PLAINTIFF'S PRODUCTS

13. Plaintiff is the owner of all right, title and interest in and to U.S. Trademark Registration No. 7868153 for the GRAB THE MIC standard character mark (the "Registered Mark").

14. Plaintiff is the owner of all right, title and interest in and to U.S. Copyright Registration No. VA 2-444-426 for the "GTM-01" photograph, U.S. Copyright Registration No. VA 2-444-461 for the "GTM-02" photograph, U.S. Copyright Registration No. VA 2-444-462 for the "GTM-03" photograph, U.S. Copyright Registration No. VA 2-444-616 for the "GTM-04" photograph, U.S. Copyright Registration No. VA 2-444-620 for the "GTM-05" photograph, U.S. Copyright Registration No. VA 2-444-622 for the "GTM-06" photograph, U.S. Copyright Registration No. VA 2-446-326 for the "GTM-07" photograph, U.S. Copyright Registration No. PA 2-537-903 for the "GTM-Video-1" video, U.S. Copyright Registration No. PA 2-537-910 for the "GTM-Video-2"

---

[1] "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) ("submission through contact with and activity directed at a sovereign may justify specific jurisdiction"). Specific jurisdiction only requires a defendant to have "minimum contacts" with the state, rather than the "continuous and systematic" standard for general jurisdiction—the defendant need only purposefully direct its activities at residents of the forum, and the plaintiff's alleged injury must arise out of or relate to the defendant's contacts with the forum. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 342 (5th Cir. 2014).

video, U.S. Copyright Registration No. PA 2-537-918 for the "GTM-Video-3" video, U.S. Copyright Registration No. PA 2-537-920 for the "GTM-Video-4" video, and U.S. Copyright Registration No. VA 2-430-422 for the "GRAB THE MIC" artwork (collectively, the "Registered Copyrights"—and together with the Registered Mark, the "Registrations").

15. The Registrations are valid, subsisting, unrevoked, and uncancelled, and the registration certificates for the Registrations constitute prima facie evidence of their validity, and of Plaintiff's exclusive right to use the Registrations.

16. Plaintiff is the owner of all right, title, and interest in and to the Registrations—attached as Exhibit 3 are genuine and authentic copies of the U.S. federal trademark and copyright registration certificates for the Registrations. Attached as Exhibit 4 are representative examples of the deposit materials submitted for the Registered Copyright applications (these being the "Works").

17. Plaintiff sells its party games throughout the world, including within the Eastern District of Texas (collectively, Plaintiff's "Products") under the Registered Mark, and through use of the Works in its marketing. Defendants' sale of Infringing Products in violation of Plaintiff's intellectual property rights is irreparably damaging Plaintiff by undercutting Plaintiff's pricing, and harming Plaintiff's brand.

18. Consumers associate Plaintiff's brand, symbolized by the Registered Mark, with high-quality and innovative products. As detailed below, Plaintiff has been using the Registered Mark for many years in connection with the advertising and sale of Plaintiff's Products in interstate and foreign commerce, including commerce in the State of Texas and the Eastern District of Texas.

19. The Registered Mark is a symbol of Plaintiff's quality, reputation, and goodwill, and has never been abandoned. Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Products in connection with the Registered Mark.

20. The Registered Mark has been widely promoted, both in the United States and throughout the world. Consumers, potential consumers, and other members of the public not only associate Plaintiff's Products with exceptional materials, style, and workmanship, but also recognize that Plaintiff's Products sold in the United States originate exclusively with Plaintiff and/or its affiliates.

21. As of the date of this filing, Plaintiff's Products are sold globally in retail markets and via the world-wide web.

22. Plaintiff maintains quality control standards for all of its Products. Genuine Products are distributed through a worldwide network of distributors and retailers, as well as Plaintiff's primary website located at www.luckyegg.co ("Website"). The Website features proprietary content, images, trademarks, and designs exclusive to Plaintiff, including the Works. Attached as Exhibit 5 are representative examples of Plaintiff's offering of its Products in connection with the Registered Mark, through use of the Works, for sale on its Website.

23. None of the Registrations have ever been assigned or licensed to any of the Defendants in this matter.

### DEFENDANTS' INFRINGING ACTIVITIES

24. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the Registrations, including Plaintiff's exclusive right to use and license such intellectual property and the goodwill associated therewith.

25. Plaintiff recently identified the Registrations being used without authorization on Infringing Products on the Infringing Webstores. These stores are designed to resemble authorized Internet retail stores, as shown below:



26. Defendants' use of the Registered Mark in connection with the advertising, marketing, distribution, offering for sale, and sale of the Infringing Products is likely to cause and has already caused confusion, mistake, and deception among consumers and is irreparably harming Plaintiff.

27. Defendants have manufactured, imported, distributed, offered for sale, and sold Infringing Products in connection with the Registered Mark and continue to do so.

28. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the Registrations in connection with the advertisement, offer for sale, and sale of the Infringing Products, through, inter alia, the Internet. The Infringing Products are not genuine Plaintiff Products. Plaintiff did not manufacture, inspect, or package the Infringing Products and did not approve the Infringing Products for sale or distribution. Each Infringing Webstore offers shipping to the United States, including Texas, and, on information and belief, each Defendant has sold Infringing Products into the United States, including Texas.

29. Defendants falsely advertise the sale of authentic Plaintiff Products through the Infringing Webstores, while utilizing the Works. Defendants' Infringing Webstore listings appear to consumers to be legitimate websites and listings, authorized to sell genuine Plaintiff Products.

30. Defendants also deceive consumers by using the Registered Mark without authorization within the content, and/or meta tags of the listings on Infringing Webstores in order to appear in search engine results for the Plaintiff Products.

31. Defendants go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate the Infringing Webstores. Upon information and belief, Defendants regularly create new websites on various platforms using the identities listed in Exhibit 1 as well as other unknown fictitious names and addresses.

32. Defendants' unauthorized use and sale of Infringing Products using Plaintiff's Registrations is irreparably damaging Plaintiff.

33. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling Infringing Products that infringe on the Registrations unless preliminarily and permanently enjoined.

34. Plaintiff has no adequate remedy at law.

## COUNT ONE
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. § 1114)

35. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth here.

36. Plaintiff's Registered Mark and the goodwill of the business associated with Plaintiff's Registered Mark in the United States and throughout the world are of great and incalculable value. The Registered Mark is highly distinctive and has become universally associated in the public mind with Plaintiff's Products. Consumers associate Plaintiff's Registered Mark with Plaintiff as the source of the very highest quality products.

37. Without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in Plaintiff's Registered Mark and the fact that Defendants' Infringing Products are sold using marks which are identical or confusingly similar to Plaintiff's Registered Mark, Defendants have manufactured, distributed, offered for sale, and/or sold the Infringing Products to the consuming public in direct competition with Plaintiff's sale of genuine Plaintiff Products, in or affecting interstate commerce.

38. Defendants' use of copies or approximations of Plaintiff's Registered Mark in conjunction with Defendants' Infringing Products is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing the Infringing Products being sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff—all to the damage and detriment of Plaintiff's reputation, goodwill, and sales.

39. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill, reputation, and sales.

## COUNT TWO
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

40. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth here.

41. The photographs, videos, and designs subject of the Registered Copyrights are copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101 *et seq*. Plaintiff is the exclusive owner of the Registered Copyrights.

42. Through the Defendants' infringing conduct, including Defendants' willful reproduction of the Works (*See* Ex. 2), Defendants have directly infringed Plaintiff's exclusive rights in the Registered Copyrights under the Copyright Act.

43. On information and belief, the Defendants' infringing conduct was and continues to be willful and with full knowledge of Plaintiff's rights in the Registered Copyrights, and has enabled the Defendants to illegally obtain profit.

44. As a direct and proximate result of the Defendants' infringing conduct, Plaintiff has been harmed and is entitled to recovery of statutory damages against Defendants for Defendants' willful reproduction of the Works. 17 U.S.C. § 504(c).

45. Plaintiff is additionally entitled to recovery of its full costs and reasonable attorney's fees against the Defendants. 17 U.S.C. § 505.

46. As a direct and proximate result of Defendants' infringing conduct, Plaintiff has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless Defendants' infringing conduct is enjoined by this Court, Defendants will continue to wrongfully infringe on Plaintiff's rights, and Plaintiff will continue to suffer irreparable harm. Plaintiff therefore is entitled to permanent injunctive relief restraining and enjoining Defendants'

ongoing infringing conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and in favor of Plaintiff as follows:

1. Declaring that each Defendant's use and display of the Registered Mark and sale of the Infringing Products infringes the Registered Mark;

2. Declaring that each Defendant's reproduction and display of the Works in connection with the sake of the Infringing Products infringes the Registered Copyrights;

3. Declaring that each Defendant's conduct was knowing, intentional, and willful;

4. Permanently enjoining each Defendant and each Defendant's successors, affiliates, servants, officers, agents, independent contractors, and employees, and anyone acting in active concert or participation with or at the behest or direction of any of the foregoing, from:

   a. advertising, displaying, distributing, selling, manufacturing, delivering, shipping, using, or enabling others to advertise, display, distribute, manufacture, deliver, ship, sell, or use any copies or derivative works based on the Registered Copyrights, other colorable imitations of the Registered Copyrights, or products and designs that otherwise infringe on the Registered Copyrights;

   b. using the Registered Mark, or any reproduction, counterfeit, copy, or colorable imitation of the Registered Mark in connection with the distribution, advertising, offer for sale, and/or sale of merchandise that are not genuine Plaintiff Products;

   c. passing off, inducing, or enabling others to sell or pass off any Infringing Products as genuine products made and/or sold by Plaintiff;

   d. committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff,

or are sponsored by, approved by, or otherwise connected with Plaintiff;

  e. further infringing on the Registered Mark and damaging Plaintiff's goodwill;

  f. competing unfairly with Plaintiff in any manner;

  g. shipping, delivering, holding for sale, distributing, returning, transferring, or otherwise moving, storing or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and that bear the Registered Mark, or any reproductions, counterfeit copies, or colorable imitations thereof;

  h. using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Webstores, listings, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Infringing Products;

  i. operating and/or hosting websites at the Infringing Webstores and any other domain names that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Registered Mark, or any reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with Plaintiff's Registered Mark;

  j. registering any additional domain names that use or incorporate any of Plaintiff's Registered Mark.

  k. moving, relocating, or otherwise disposing of any funds currently located in Defendants' online accounts, including, without limitation, from Alibaba, AliExpress, Amazon, Bonanza, CJDropshipping, DHGate, eBay, Fruugo, Shein, Shopify, Temu, Walmart, Wish, Alipay, PayPal, Stripe, Payoneer, WorldFirst, and Western Union;

  l. removing, destroying, or otherwise disposing of computer files, electronic files, business records, or documents relating to any of Defendants' webstores, websites, assets,

operations, or relating in any way to the reproduction and display of the Registered Mark; and

m. engaging in any other activity that infringes on Plaintiff's rights in any manner.

5. Ordering that all Infringing Images in Defendants' reasonable control be deleted or destroyed pursuant to 17 U.S.C. § 503(b);

6. Ordering Defendants to, within ten days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner in which Defendants have complied with any and all injunctive relief ordered by this Court;

7. Ordering that Defendants account for, and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Registered Mark be increased by a sum not exceeding three times the amount thereof as provided by law as provided by 15 U.S.C. § 1117.

8. Awarding Plaintiff statutory damages for willful infringement of the Registered Copyrights in the total amount of $150,000 per Defendant pursuant to 17 U.S.C § 504(c)(2);

9. Awarding Plaintiff statutory damages against each Defendant in the amount of $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, as this Court considers just, and if this Court finds willful use of the counterfeit marks pursuant to 15 U.S.C. § 1117(c)(2); in the alternative, that Plaintiff be awarded statutory damages against each Defendant in the amount of $200,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, as this Court considers just pursuant to 15 U.S.C. § 1117(c)(1);

10. Awarding Plaintiff recovery of its full costs and reasonable attorney's fees jointly and severally against the Defendants pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1116, and 15 U.S.C. § 1117, together with prejudgment and post-judgment interest, and;

11. That this Court enter an order pursuant to Fed. R. Civ. P. 65(d)(2)(C) that those in

privity with Defendants and those with notice of the injunction, including ecommerce platform providers, such as Alibaba, AliExpress, Amazon, Bonanza, CJDropshipping, DHGate, eBay, Fruugo, Shein, Shopify, Temu, Walmart, Wish, etc., and payment processors, such as Alipay, PayPal, Stripe, Payoneer, WorldFirst, Western Union, or other bank accounts or payment processors used by the Defendants (each of the foregoing ecommerce platform providers and payment processors, a "Third Party Provider") shall within 3 business days of receipt of the corresponding order:

    a.    Take all steps to prevent any Defendant from accessing or withdrawing funds from any accounts through which the Defendants, in the past, currently, or in the future, engage in the unauthorized use of the Works or the Registered Mark, and advertisement and sale of the Infringing Products, including, but not limited to, any accounts associated with the Defendants listed on the attached Exhibit 1; and

    b.    take all necessary steps to prevent any Defendant from accessing or withdrawing funds from any accounts linked to the Defendants, linked to any email addresses used by the Defendants, or linked to any of the Infringing Webstores.

12.    That this Court grant Plaintiff such other and further relief as it deems to be just and proper.

Dated: October 24, 2025            Respectfully submitted,

                                              **Scale LLP**

                                              By: */s/ Charles A. Wallace*
                                              Charles A. Wallace
                                              Texas Bar No. 24110501
                                              James H. Creedon
                                              Texas Bar No. 24092299
                                              3723 Greenville Ave., Suite 41010
                                              Dallas, Texas 75206
                                              Tel.     415.735.5933
                                              Fax     415.573.0983
                                              cwallace@scalefirm.com
                                              jcreedon@scalefirm.com

                                              ATTORNEYS FOR PLAINTIFF
                                              LUCKY EGG LIMITED

<u>**MOTION TO FILE UNDER SEAL**</u>

     I hereby certify that, in accordance with Local Rule CV-5(a)(7), a motion to seal the above document has been filed with this Court.

                                              By: */s/ Charles A. Wallace*
                                                   Charles A. Wallace