UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| LUCKY EGG LIMITED,<br><br>          Plaintiff,<br><br>    v.<br><br>THE INDIVIDUALS, BUSINESS ENTITIES, & UNINCORPORATED ASSOCIATION IDENTIFIED ON EXHIBIT 1,<br><br>          Defendants. | Civil Action No. 4:25-cv-1174 |

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

Pursuant to Federal Rule of Civil Procedure 55(b)(2) and the Clerk's entry of default (Dkt. 24), Lucky Egg Limited ("Plaintiff") moves for an order of default judgment against each of the Defendants listed in the attached Exhibit 1 (the "Defaulting Defendants"). In support of this request, Plaintiff relies on the record in this case and the attached, incorporated exhibits. Plaintiff respectfully requests that the Court, for the reasons below, enter the accompanying proposed Default Judgment and Order for Permanent Injunction.

## STATEMENT OF ISSUES

The only issue before this Court is whether Plaintiff's well-pleaded allegations of fact in its Complaint (Dkt. 1) entitle Plaintiff to default judgment against the Defaulting Defendants as to Plaintiff's allegations of Trademark Infringement and Counterfeiting pursuant to 15 U.S.C. § 1114 and Copyright Infringement pursuant to 17 U.S.C. § 501.

## PROCEDURAL BACKGROUND

Plaintiff brought this action on October 24, 2025 (Dkt. 1) against the Defendants listed in Exhibit 1 to the Complaint ("Defendants"), seeking relief against Defendants for trademark infringement and counterfeiting under 15 U.S.C. § 1114 an copyright infringement under 17 U.S.C. § 501, through Defendants' promotion, advertising, marketing, distribution, offering for sale, and sale of products that infringe on Plaintiff's intellectual property rights ("Infringing Products") via online stores (the "Infringing Webstores") on various e-commerce platforms, such as Alibaba, AliExpress, Amazon, DHGate, eBay, Fruugo, Shein, Shopify, Temu, and Walmart (the "Marketplaces"). Plaintiff sought discovery from the Marketplaces immediately upon issuance of the TRO (Dkt. 13, the "TRO") in an attempt to properly identify each of the Defendants, and Plaintiff thereafter incorporated the information provided by the Marketplaces into its requested summonses—all of these summonses were issued by the Clerk for service on Defendants. Dkt. 12. The Court issued a preliminary injunction on November 24, 2025 (Dkt. 22, the "PI")—extending the relief ordered in the TRO.

Plaintiff also filed its Motion for Alternative Service of Process on October 24, 2025. Dkt. 8. Exercising its authority under Federal Rule of Civil Procedure 4(f)(3), the Court granted Plaintiff's Motion for Alternative Service of Process on October 28, 2025. Dkt. 10. Plaintiff thereafter served each of the Defaulting Defendants on November 10, 2025 via email pursuant to

the Court's order. Dkt. 20. None of the Defaulting Defendants filed a responsive pleading, so Plaintiff filed its Request for Clerk's Entry of Default on December 2, 2025. Dkt. 23. The Clerk thereafter entered default against the Defaulting Defendants on December 8, 2025. Dkt. 24.

**STATEMENT OF FACTS**

Plaintiff is engaged in the business of designing, manufacturing, distributing, and retailing its popular tabletop game throughout the world (Plaintiff's "Product"). Plaintiff is the owner of all right, title, and interest in and to U.S. Trademark Registration No. 7868153 for the GRAB THE MIC standard character mark (the "Registered Mark"), and Plaintiff is the owner of all right, title, and interest in and to U.S. Copyright Registration No. VA 2-444-426 for the "GTM-01" photograph, U.S. Copyright Registration No. VA 2-444-461 for the "GTM-02" photograph, U.S. Copyright Registration No. VA 2-444-462 for the "GTM-03" photograph, U.S. Copyright Registration No. VA 2-444-616 for the "GTM-04" photograph, U.S. Copyright Registration No. VA 2-444-620 for the "GTM-05" photograph, U.S. Copyright Registration No. VA 2-444-622 for the "GTM-06" photograph, U.S. Copyright Registration No. VA 2-446-326 for the "GTM-07" photograph, U.S. Copyright Registration No. PA 2-537-903 for the "GTM-Video-1" video, U.S. Copyright Registration No. PA 2-537-910 for the "GTM-Video-2" video, U.S. Copyright Registration No. PA 2-537-918 for the "GTM-Video-3" video, U.S. Copyright Registration No. PA 2-537-920 for the "GTM-Video-4" video, and U.S. Copyright Registration No. VA 2-430-422 for the "GRAB THE MIC" artwork (collectively, the "Registered Copyrights"—and together with the Registered Mark, the "Registrations").

Plaintiff has expended considerable resources advertising, marketing, and promoting Plaintiff's Products subject to the Registrations, and these efforts have resulted in substantial sales of Plaintiff's Products, as well as accumulation of invaluable consumer goodwill. Dkt. 6, Exhibit

1. Plaintiff discovered that Defendants were selling the Infringing Products on the Infringing Webstores, and Plaintiff confirmed that Defendants were offering the Products for sale to U.S. and Texas residents. *Id*. Defendants and the Infringing Webstores do not conduct business with Plaintiff and do not have the right or authority to use, reproduce, or display the Infringing Products in any manner whatsoever. *Id*.

Defendants' infringing activities are depriving Plaintiff of the ability to control use and licensing of its Products, and are preventing Plaintiff from enjoying the exclusive rights to use and control its Registrations. Such loss of control over the Products and Registrations is neither calculable nor precisely compensable. Given the online nature of Defendants' commercial activities, Defendants have substantially benefitted from their unlawful tactics and infringement of the Registrations to profit from the sale of the Infringing Products. The willfully infringing and deceptive tactics used by the Defaulting Defendants to conceal their identities and the full scope of their infringing operations make it virtually impossible for Plaintiff to learn the true extent of the Defaulting Defendants' actions. Plaintiff therefore seeks to enforce its rights and recover from the Defaulting Defendants.

**ARGUMENT**

## I.    Jurisdiction and Venue Are Proper in This Court

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 because this is an action arising under the laws of the United States and relating to copyrights and trademarks.

This Court has personal jurisdiction over Defendants because each Defendant has, through one or more fully interactive commercial Internet websites, pursued sales from Texas residents by

offering shipping to Texas (Dkt. 6, Exhibit 1), and, on information and belief, has induced sales of Infringing Products to residents of Texas by wrongfully reproducing and displaying the subjects of the Registrations. As such, personal jurisdiction is proper because each of the Defendants transacts business to the State of Texas, is committing infringing acts in Texas, and has wrongfully caused Plaintiff substantial injury in the State of Texas.

This Court also has personal jurisdiction over Defendants because Plaintiff's claims arise under federal law; the Defendants are, on information and belief, not subject to jurisdiction in any state's courts of general jurisdiction; and exercise of such jurisdiction is consistent with the United States Constitution and laws. Fed. R. Civ. P. 4(k)(2).[1] Personal jurisdiction is thus also proper pursuant to Rule 4(k)(2) because each of the Defendants directs its activities at residents of the United States and the State of Texas.

Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendants are entities or individuals subject to personal jurisdiction in this District, and Defendants not residing in the United States may be sued in any judicial district.

## II.    Plaintiff Has Met the Requirements for Default Judgment

Federal Rule of Civil Procedure 55 governs the procedural requirements related to the entry of default judgment. Although default judgments are generally disfavored, the policy against default judgments is "counterbalanced by considerations of social goals, justice and expediency, a weighing process that lies largely within the domain of the trial judge's discretion." *Wooten v.*

---

[1] "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) ("submission through contact with and activity directed at a sovereign may justify specific jurisdiction"). Specific jurisdiction only requires a defendant to have "minimum contacts" with the state, rather than the more rigorous "continuous and systematic" standard for general jurisdiction—the defendant need only purposefully direct its activities at residents of the forum, and the plaintiff's alleged injury must arise out of or relate to the defendant's contacts with the forum state. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 342 (5th Cir. 2014).

*McDonald Transit Associates, Inc.*, 788 F.3d 490, 496 (5th Cir. 2015). A default judgment is appropriate "when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact . . . and is barred from contesting on appeal the facts thus established." *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations, assumed to be true. *Wooten*, 788 F.3d at 496.

Plaintiff served each of the Defaulting Defendants on November 10, 2025. Dkt. 20. More than 21 days have passed since the Defaulting Defendants were served, and no answer has been filed. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate. Plaintiff therefore respectfully requests an award of statutory damages against each Defaulting Defendant in the amount of $200,000 pursuant to 15 U.S.C. § 1117, and an additional $150,000 pursuant to 17 U.S.C. § 504(c)(2), in the total amount of $350,000 per defendant.

Plaintiff also respectfully requests an award of its reasonable attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117. Plaintiff further seeks entry of a permanent injunction pursuant to 17 U.S.C. § 502 and 15 U.S.C. § 1117 prohibiting the Defaulting Defendants from continuing to use the Infringing Products, and an Order that all assets in the Defaulting Defendants' Alibaba, AliExpress, Amazon, DHGate, eBay, Fruugo, Shein, Shopify, Temu, Walmart, Alipay, PayPal, Payoneer, Stripe, WorldFirst, Western Union, MoneyGram, or other bank accounts, as well as any newly discovered assets, be transferred to Plaintiff.

### A.    Trademark Infringement and Counterfeiting

A prima facie trademark infringement and counterfeiting case "is made out by proof of two elements: that the plaintiff owns a legally protected mark, and there is a likelihood of confusion between her mark and the defendant's mark." *Pennzoil-Quaker State Co. v. Miller Oil & Gas*

*Operations*, 779 F.3d 290, 294 (5th Cir. 2015). Plaintiff satisfies all these requirements and should therefore succeed on the merits of its counterfeiting claim against the Defaulting Defendants.

Plaintiff has already established that it owns the legally-protected Registered Mark. Dkt. 6, Exhibit 1; *see also* Dkt. 3, Exhibit 3. Plaintiff has therefore established the first element of its counterfeiting claim. The likelihood of confusion factors examined by the Fifth Circuit are: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers. The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the . . . factors." *Am. Rice, Inc. v. Producers Rice Mill, Inc*., 518 F.3d 321, 329 (5th Cir. 2008).

The first factor weighs in Plaintiff's favor, for Plaintiff's Registered Mark is inherently distinctive and registered with the United States Patent and Trademark Office ("USPTO") on the Principal Register. The Registered Mark has been used exclusively and continuously by Plaintiff for many years. Dkt. 6, Exhibit 1. The second factor also weighs in Plaintiff's favor because the marks being used by the Defendants are identical to Plaintiff's Registered Mark, as the Defendants are seeking to trade on the goodwill of Plaintiff's Registered Mark. Furthermore, Plaintiff has never licensed or given Defendants the right to use any of the Registered Mark. *Id*. The third factor also weighs in Plaintiff's favor because Defendants are using the Registered Mark while selling exact counterfeit copies of Plaintiff's genuine branded Products. When considering the fourth factor, courts consider "the similarity of the parties' retail outlets and customers." *Amstar Corp. v. Domino Pizza, Inc*., 615 F.2d 252, 262 (5th Cir. 1980) Here, both Plaintiff and Defendants advertise and sell their products to consumers via the Internet and online ecommerce webstores.

Both parties use the same means and channels of commerce to target the same consumers looking for genuine Plaintiff Products. The fourth and fifth factors therefore also weigh in favor of Plaintiff. Regarding the sixth factor, if a mark was adopted with the intent to confuse the public, that alone is often sufficient to justify an inference of a likelihood of confusion. Dkt. 6, Exhibit 1. This factor weighs in Plaintiff's favor, as the Defendants are intentionally using the Registered Mark to confuse and deceive the consuming public into thinking that the Infringing Products are manufactured by, or originate from, Plaintiff in an attempt to benefit and trade off of Plaintiff's goodwill and reputation. Actual confusion can be inferred in this case because Defendants are selling identical counterfeit versions of Plaintiff's Products using Plaintiff's Registered Mark. Because the goods as advertised look identical, consumers are likely to have already been confused to believe that Defendants' Infringing Products are genuine Plaintiff Products, or are sponsored or endorsed by Plaintiff. The seventh factor therefore weighs in Plaintiff's favor. Finally, the consumers of Plaintiff's genuine products and the Infringing Products are all average consumers who are not exercising any notable care when making purchasing decisions. The eighth and final factor therefore also weighs in Plaintiff's favor.

In sum, each and every likelihood of confusion factor favors Plaintiff, and Plaintiff is likely to succeed on the merits of its infringement and counterfeiting claim. Because the Defaulting Defendants have failed to respond in this matter, the Court must accept the allegations contained in the Complaint as true. Fed. R. Civ. P. 8(b)(6). Accordingly, Plaintiff requests that this Court enter judgment against each of the Defaulting Defendants with respect to Plaintiff's well-pleaded allegations of counterfeiting in violation of 15 U.S.C. § 1114.

### B.    Copyright Infringement

The Copyright Act affords a copyright owner the exclusive rights to authorize and do the following: (1) reproduce the copyrighted work in copies; (2) prepare derivative works based on the copyrighted work; (3) distribute copies of the copyrighted work to the public; (4) perform the copyrighted work publicly; (5) display the copyrighted work publicly; and (6) for sound recordings, perform the copyrighted work publicly by digital transmission. 17 U.S.C. § 106. A violation of these rights constitutes an infringement of the owner's copyright. 17 U.S.C. § 501. A plaintiff must generally prove two elements to establish copyright infringement: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 439 (5th Cir. 2017), (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

### i.    Plaintiff owns valid copyright in the Registrations

The first prong, ownership of a valid copyright, extends only to copyrightable subject matter, which the Copyright Act defines as (1) original (2) works of authorship (3) fixed in any tangible medium of expression." *See* 17 U.S.C. § 102(a); *see also Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1008 (2017). The originality requirement "is not particularly stringent." *Feist Publ'ns, Inc.*, 499 U.S. at 358. In fact, the originality requirement does not even require "novelty, ingenuity, or aesthetic merit." See *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 141 (5th Cir. 1992); *see also Feist Publ'ns, Inc.*, 499 U.S. at 345. All that is required is independent creation plus "at least some minimal degree of creativity." *Feist Publ'ns, Inc.*, 499 U.S. at 345. The "works of authorship" requirement explicitly includes "pictorial, graphic, and sculptural works" as well as "motion pictures and other audiovisual works." 17 U.S.C. § 102(a). "A work is "fixed" in a "tangible medium of expression" when its embodiment in a copy, by or

under the authority of the author, is sufficiently stable to permit it to be perceived for more than transitory duration. 17 U.S.C. § 101. It is generally accepted that ownership of a copyright certificate of registration constitutes *prima facie* evidence that "the copyright is valid and that the registrant owns the copyright." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004).

Plaintiff owns valid rights in its Registered Copyrights. Dkt. 3, Ex. 3. Plaintiff's Registered Copyrights thus satisfy the "not particularly stringent" originality requirement because Plaintiff independently created the subjects of the Registered Copyrights and used at least a "minimal level of creativity" to do so. *See Feist Publ'ns, Inc.*, 499 U.S. at 358. The subjects of Plaintiff's Registered Copyrights also meet the 17 U.S.C. § 102(a) work of authorship requirement because they are pictorial and audiovisual works. *See* 17 U.S.C. § 102(a)(5). Because the subjects of Plaintiff's Registered Copyrights consists of pictorial and audiovisual works that are physically embodied and can be perceived, they are sufficiently "fixed in a tangible medium of expression." *See* 17 U.S.C. § 101. Moreover, Plaintiff's registration certificates establish that the U.S. Copyright Office has attested to the validity of the Registered Copyrights, the facts stated in the registration certificates, and that Plaintiff owns the Registered Copyrights. Plaintiff thus meets the requirements of the first copyright infringement prong by establishing its ownership of valid copyright registrations.

### ii. Defaulting Defendants copied the original constituent elements of Plaintiff's Registrations

A plaintiff must make two showings to prove actionable copyright infringement under the second prong: (1) that the defendant actually used the copyrighted material to create the allegedly infringing work and (2) that the allegedly infringing work is "substantially similar" to protectable elements of plaintiff's work. *Gen. Universal Sys.*, 379 F.3d at 141–42.

A plaintiff can prove actual copying by direct or circumstantial evidence. *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007). When bringing a circumstantial case of actual copying, "a plaintiff must prove that (1) the defendant had access to the copyrighted work before creation of the infringing work and (2) the works contain similarities that are probative of copying." *Id*. "The combined existence of access to the copyrighted work and similarities between the two works establishes the assumption as a matter of law that copying in fact occurred." *Id.* A plaintiff establishes access by proving that the defendant "had a reasonable opportunity to view the copyrighted work" before creating the allegedly infringing work. *Id.* at 153. Once access is established, the plaintiff must show that the works, "when compared as a whole, are adequately similar to establish appropriation." *Gen. Universal Sys.*, 379 F.3d at 141.

The Defaulting Defendants directly copied the subjects of Plaintiff's Registered Copyrights, as circumstantial evidence shows that the subjects of Plaintiff's Registered Copyrights and the infringing photographs are identical. The Defaulting Defendants would not have been able to reproduce such identical infringing photographs but for their having access to the subjects of Plaintiff's Registered Copyrights. Circumstantial evidence, therefore, shows that the Defaulting Defendants actually copied the subjects of Plaintiff's Registered Copyrights to create the infringing photographs.

Substantial similarity requires a comparison between the plaintiff's work and the infringing copy to determine whether a layman would view the works as "substantially similar." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc*., 783 F.3d 527, 550 (5th Cir. 2015). Next, the plaintiff must show that the copy bears a substantial similarity to the "protected aspects" of the plaintiff's work. *See Id.* at 550; *see also Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 548 (1985) (finding that 300 words copied from a 450-page book constituted infringement).

The infringing photographs are not only substantially similar to the subjects of Plaintiff's Registered Copyrights, as explained in Plaintiff's Original Complaint (Dkt. 1), for they are identical as exhibited below:



The substantial similarity between the subjects of Plaintiff's Registered Copyrights and the infringing photographs speaks for itself, for the infringing photographs are exact willful copes of the subjects of Plaintiff's Registered Copyrights. The subjects of Plaintiff's Registered Copyrights are, in their entireties, made up of "protected" materials because Plaintiff independently created the subjects of Plaintiff's Registered Copyrights and used "at least some minimal degree of creativity" to do so. *See Feist Publ'ns*, 499 U.S. at 345. When viewed side-by-side, a layman would agree that the subjects of Plaintiff's Registered Copyrights and the infringing photographs are "substantially similar," and in fact, are exactly the same. Plaintiff thus meets the requirements of the second copyright infringement prong by establishing that the Defaulting Defendants copied the constituent elements of the subjects of Plaintiff's Registered Copyrights that are original to Plaintiff.

The Defaulting Defendant's copying and public display of the subjects of Plaintiff's Registered Copyrights violate Plaintiff's exclusive rights pursuant to 17 U.S.C. § 501. Plaintiff has no adequate remedy at law and, if the Defaulting Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to his business' goodwill, reputation, and sales. These well-pleaded allegations in Plaintiff's Original Complaint establish that the Defaulting Defendants' acts constitute copyright infringement in violation of 17 U.S.C. §§ 101 *et seq.*, and because the Defaulting Defendants have failed to respond in this matter, the Court must accept the allegations contained in the Complaint as true. Fed. R. Civ. P. 8(b)(6). Accordingly, Plaintiff requests that this Court enter judgment against each of the Defaulting Defendants with respect to Plaintiff's well-pleaded allegations of copyright infringement in violation of 17 U.S.C. §§ 101 *et seq*.

## III.     PLAINTIFF IS ENTITLED TO MONETARY AND INJUNCTIVE RELIEF

### A.     Plaintiff Elects to Recover Statutory Damages Under the Copyright Act

Pursuant to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c), a "copyright owner may elect, at any time before final judgment is rendered, to recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If the court finds, however, that the infringement was committed willfully, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). The Fifth Circuit has recognized that district courts have wide latitude in deciding whether to require an evidentiary hearing before entering default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citing Fed. R. Civ. P. 55(b)(2)). Where "the amount claimed is a liquidated sum or one capable of mathematical calculation[,]" an evidentiary hearing is not required. *James*, 6 F.3d at 310. "[S]tatutory damages are intended not merely for the restitution of profits or reparation of injury, but to deter wrongful conduct." *Mouse On Tha Track LLC v. Parg Mgmt. LLC*, No. 3:18-CV-2980-S-BH, 2019 WL 6970946, at *7 (N.D. Tex. Nov. 13, 2019). Plaintiff therefore seeks recovery of statutory damages pursuant to 17 U.S.C. § 504(c)(2) against each Defaulting Defendant in the amount of $150,000 for all of the Registered Copyrights infringed (rather than $150,000 for each Registration infringed), and as the Defaulting Defendants have not appeared in this action and the amount claimed in a liquidated sum, Plaintiff respectfully requests that the Court award this relief of $150,000 in full against each Defaulting without holding a hearing.

### B.    Defaulting Defendants Infringed the Registered Copyrights Willfully

Although the Supreme Court has not directly addressed the definition of "willful" under the Copyright Act, the Fifth Circuit looks to *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007) in applying "the common law construction of the term 'willful'" to be interpreted as "not only knowing violations of a standard, but reckless ones as well." *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 394–95 (5th Cir. 2014) (quoting *Safeco Ins. Co. of America*, 551 U.S. at 58). *Safeco*, therefore, "mandates that we interpret 'willful' under § 504(c)(2) as encompassing more than just 'knowing' infringements." *Graper*, 756 F.3d at 395. "In making a statutory award, the court may consider the likelihood of profits and losses and may take into account the attitude and conduct of the parties[,]" and "constructive" knowledge can be deemed willful. *Malaco Inc. v. Cooper*, No. CIV.A. 300CV2648P, 2002 WL 1461927, at *4 (N.D. Tex. July 3, 2002); *see also Graper*, 756 F.3d at 394 ("A finding of willfulness in the underlying suit would not adjudicate the fact of whether the infringement was knowing because a finding of willfulness under the Copyright Act does not require proof of knowing conduct"). Courts in the Fifth Circuit have recognized willful infringement where defense efforts are "spare," where a defendant makes "no attempt whatsoever to avoid infringement," or "where a defendant acted with 'reckless disregard' for or 'willful blindness' to the rights of a copyright owner.") *Flowserve Corp. v. Hallmark Pump Co., Inc.*, No. 4:09-cv-0675, 2011 WL 1527951, at *6 (S.D. Tex. Apr. 20, 2011) (internal quotations omitted); *Malaco*, 2002 WL 1461927, at *5. A district court "has broad discretion in determining a damage award within the range provided by statute[,]" for instance, "the court may consider the deterrent effect on the infringer and on third parties, expenses saved and profits gained from the infringement, and the infringer's state of mind in committing the infringement." *Malaco*, 2002 WL 1461927 at *5.

The Defaulting Defendants have been using the infringing photographs on the Infringing Webstores without Plaintiff's authorization, which demonstrates that the Defaulting Defendants had knowledge that their activities infringed on Plaintiff's rights, or at least shows that the Defaulting Defendants were willfully blind, or acted with reckless disregard to Plaintiff's rights in the Registered Copyrights. The Defaulting Defendants' infringements were therefore committed willfully.

### C.    Plaintiff Elects to Recover Statutory Damages Under the Lanham Act

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117:

> [i]n a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover . . . an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). The Fifth Circuit has recognized that district courts have wide latitude in deciding whether to require an evidentiary hearing before entering default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citing Fed. R. Civ. P. 55(b)(2)). Where "the amount claimed is a liquidated sum or one capable of mathematical calculation[,]" an evidentiary hearing is not required. *James*, 6 F.3d at 310. "[S]tatutory damages are intended not merely for the restitution of profits or reparation of injury, but to deter wrongful conduct." *Mouse On Tha Track LLC v. Parg Mgmt. LLC*, No. 3:18-CV-2980-S-BH, 2019 WL 6970946, at *7 (N.D. Tex. Nov. 13, 2019). Plaintiff therefore seeks recovery of statutory damages pursuant to 15 U.S.C. § 1117(c) against each Defaulting Defendant in the amount of $200,000 for infringing on the Registered

Mark, and as the Defaulting Defendants have not appeared in this action and the amount claimed is a liquidated sum, Plaintiff respectfully requests that the Court award this relief of $200,000 against each Defaulting Defendant, instead of the statutory maximum of $2,000,000, without holding a hearing. Plaintiff asserts is fair and reasonable given the circumstances—especially in light of the Defaulting Defendants' failure to appear or defend against this lawsuit.

### D. Defaulting Defendants Infringed the Registered Mark Willfully

Courts in the Fifth Circuit "have found willful conduct where a defendant acts with 'reckless disregard for, or [with] willful blindness' toward a trademark owner's rights." *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 693 (W.D. Tex. 2008) (quoting *Berg v. Symons* 393 F. Supp. 2d 525, 539–40 (S.D. Tex. 2005)). Such willful blindness can be established when the defendant "knows his actions constitute an infringement; the actions need not have been malicious." *Better Keiki*, 2018 WL 5305571, at *6 (citing *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988)). Further, a defendant's failure to defend itself allows the Court to infer willfulness. *Rolex Watch U.S.A., Inc. v. Munn*, 2019 U.S. Dist. LEXIS 224209, at *4 (E.D. Tex. 2019) (citing *Tapestry, Inc. v. Trendy Texas, LLC*, 2018 WL 1558274, at *1 (S.D. Tex. 2018)).

While the Defaulting Defendants' default allows the Court to infer their willfulness, Plaintiff has also independently demonstrated that the Defaulting Defendants willfully infringed its Registered Mark. Plaintiff's ownership of its Registered Mark put the Defaulting Defendants on notice that similar products were not legally available to reproduce and sell without permission from Plaintiff. *See Iancu v. Brunetti*, 588 U.S. 388, 389 (2019) (citation omitted) ("[R]egistration serves as 'constructive notice of the registrant's claim of ownership[.]'"). Plaintiff's Registered Mark is specifically associated with its Products and have been for many years. Dkt. 6, Exhibit

1. None of the Defaulting Defendants have business relations with Plaintiff, and Plaintiff has not given any Defaulting Defendant authorization to use its Registered Mark. *Id*. Nevertheless, the Defaulting Defendants used Plaintiff's Registered Mark on and in connection with the Infringing Products. Such action demonstrates that the Defaulting Defendants were either aware of or willfully blind to the fact that they were infringing Plaintiff's Registered Mark. The Defaulting Defendants' infringements were therefore committed willfully.

### E.    A High Statutory Damages Award Is Appropriate and Just

17 U.S.C. § 504(c) contains the dollar range for a possible statutory damage award. The only guidance provided by the statute on how to determine a damage award within the statutory range is "as the court considers just." 17 U.S.C. § 504(c)(1). A district court "has virtually unfettered discretion in deciding the quantum of damages to award in a copyright infringement case" as long as such award is "[b]etween the statutory maximum and minimum." *Cullum v. Diamond A Hunting, Inc*., 484 F. App'x 1000, 1002 (5th Cir. 2012); *see also Playboy Enterprises, Inc. v. Webbworld, Inc*., 991 F. Supp. 543, 560 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999) (citing *F.W. Woolworth Co. v. Contemporary Arts,* 344 U.S. 228, 231 (1952); *Broadcast Music, Inc. v. Star Amusements, Inc.,* 44 F.3d 485, 487–89 (7th Cir.1995) (holding that the standard of review for an award of statutory damages is even more deferential than an abuse of discretion standard). "Among the numerous factors considered by the courts in setting statutory damage amounts are the expenses saved and profits reaped by the infringer; the deterrent effect of the award on a defendant and on third parties; and the infringer's state of mind in committing the infringement." *Playboy Enterprises*, 991 F. Supp. at 560.

Very little discovery occurred with regard to the Defaulting Defendants' overall sales to-date and the Defaulting Defendants' profit margins directly related to the sale of the Infringing

Products, as none of the Defaulting Defendants have provided this information, and the Marketplaces have not been able to provide Plaintiff with all of the information requested throughout this case. The first two factors therefore cannot be assessed with accuracy. *See Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584 (E.D. Pa. 2002) (finding that "the first two factors cannot be assessed" because "no discovery ever occurred"). Issuing a default judgment and permanent injunction on the Defaulting Defendants is undoubtedly the best, and indeed truly the only way to deter future infringing conduct. *See Sony Music Ent. v. Cassette Prod., Inc.*, No. CIV. A. 92-4494(JCL), 1996 WL 673158, at *6 (D.N.J. Sept. 30, 1996) ("It is reasonable for the Court to consider a Defendant in default as willful, in exercising its discretion within the 'sliding scale' of its authority to award statutory damages, because a Court's award of statutory damages is the only deterrent that will have any effect on a Defendant"). The Defaulting Defendants' willful state of mind in violating Plaintiff's Registrations by marketing and selling the Infringing Products weighs in favor of a high award of statutory damages.

The statutory damages provisions of both the Copyright Act and Lanham Act were designed to ensure a plaintiff is adequately compensated, and a high statutory damage award serves the need to deter future infringement. In similar cases involving copyright infringement, courts have awarded the plaintiff maximum statutory damages under 17 U.S.C. §504(c). *See, e.g., F. W. Woolworth*, 344 U.S. at 234 (1952) (maximum statutory damages appropriate where a defendant admitted realization of profits from the sale of replicas of plaintiff's copyrighted materials, and plaintiff demonstrated that it had suffered "real and substantial injury"); *see also; Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 272 (5th Cir. 2020) (citing *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496–97 (4th Cir. 1996), which found that maximum statutory damages was appropriate where the gross revenue

from infringement was $10,200); *Naughtys LLC v. Does 1-580*, No. 4:21-CV-492-O, 2022 WL 5213381, at *2 (N.D. Tex. Sept. 14, 2022) (maximum statutory damages appropriate for both copyrighted works at issue notwithstanding that the discovery period yielded minimal data relating to the defendants' sales); *DISH Network L.L.C. v. Khalid*, No. CV H-19-4563, 2021 WL 765709, at *7 (S.D. Tex. Feb. 23, 2021) (maximum statutory damages appropriate where the defendant failed to participate in the proceeding, defied infringement notices, evaded service providers' attempts to halt the infringement, and likely profited from the infringement and caused substantial losses to the plaintiff). "Copyright infringement . . . must not be allowed to serve as the cornerstone of a profitable business" (*Playboy Enterprises*, 991 F. Supp. at 561), and an award of high statutory damages in this case will assist in curtailing further willful foreign infringement of U.S. copyrights. Likewise, in similar cases involving willful trademark infringement and counterfeiting, courts have awarded the plaintiff maximum statutory damages pursuant to 15 U.S.C. § 1117(c)(2) to punish the defendants for their counterfeiting activities, to deter the defendants and others from bringing counterfeit goods into commerce, and to adequately compensate the plaintiff. *Phillip Morris USA Inc. v. Marlboro Express*, 2005 WL 2076921, at *6 (S.D.N.Y. 2005); *Philip Morris USA Inc. v. Banh et al.*, 2005 WL 5758392, at *7 (C.D. Cal. 2005); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501–02 (C.D. Cal. 2003).

Awarding high statutory damages in this case will deter further infringers and punish the Defaulting Defendants for failing to participate in this litigation. Defaulting Defendants have not appeared, nor have they provided any records to help in assessing potential damages. In sum, because Defendants' conduct was willful, and Defendants have still failed to appear or cooperate in resolving this matter, an award of statutory damages against each Defaulting Defendant in the amount of $350,000 total for infringing Plaintiff's Registrations is warranted. Given the Court's

clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c) and 17 U.S.C. § 504(c), Plaintiff respectfully requests the Court's entry of an award of $350,000 against each Defaulting Defendant.

### D.    Plaintiff is Entitled to Recover its Costs and Attorneys' Fees

The Copyright Act also provides for the recovery of costs and attorneys' fees:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. The Fifth Circuit recognizes that "[A]ttorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely." *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 326 (5th Cir. 2022) (referencing *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008)) (emphasis in original). The Defaulting Defendants' willful infringement of the Registered Copyrights warrants an award of full attorneys' fees and costs to Plaintiff—especially because the Defaulting Defendants directly copied and used Plaintiff's copyrighted works without authorization to market, sell, and generate revenue from the sale of Infringing Products. Furthermore, the Defaulting Defendants failed to answer Plaintiff's complaint or otherwise defend the lawsuit, thereby establishing that the Defaulting Defendants' improper conduct was committed deliberately, willfully, knowingly, and intentionally simply by virtue of their default. Plaintiff therefore seeks recovery of its full costs and attorney's fees from the Defaulting Defendants pursuant to 17 U.S.C. § 505.

Plaintiff also seeks recovery of its reasonable and necessary attorney's fees and costs pursuant to 15 U.S.C. § 1117(a). A court may award attorney's fees for a 15 U.S.C. § 1125(a) violation in "exceptional cases." 15 U.S.C. § 1117(a). The Fifth Circuit has found "exceptional

cases" when the defendant acts maliciously, fraudulently, deliberately, or willfully. *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc*., 951 F.2d 684, 697 (5th Cir. 1992). Courts in this circuit have also routinely characterized a defendant's improper conduct as deliberate, willful, knowing, and intentional simply by virtue of the defendant's default. *Real Estate Edge, LLC v. Campbell*, 2019 WL 830966, at *6 (W.D. Tex. 2019). Plaintiff is entitled to recover its attorney's fees pursuant to 15 U.S.C. § 1117(a) because the instant case qualifies as an "exceptional case" under Fifth Circuit law. The Defaulting Defendants directly copied Plaintiff's Products, using the Registered Mark, without authorization to market, sell, and generate revenue from the sale of Infringing Products. Dkt. 6, Exhibit 1. Furthermore, the Defaulting Defendants failed to answer Plaintiff complaint or otherwise defend the lawsuit, thereby establishing that the Defaulting Defendants' improper conduct was committed deliberately, willfully, knowingly, and intentionally simply by virtue of their default. Plaintiff therefore seeks recovery of its full costs and attorney's fees from the Defaulting Defendants pursuant to 15 U.S.C. § 1117.

### E.    Plaintiff is Entitled to Permanent Injunctive Relief Under the Copyright Act

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining the Defaulting Defendants from continuing their infringing use of the Registered Copyrights and sale of the Infringing Products. "To establish entitlement to permanent injunctive relief in copyright infringement cases, the party seeking the injunction must demonstrate (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) the injunction will not disserve the public interest. *F.M.D. Holdings, LLC v. Regent Fin. Corp*., No. 5:20-CV-269-H, 2021 WL 5883136, at *24 (N.D. Tex. Dec. 10, 2021) (internal quotations omitted).

Plaintiff has prevailed on the merits, establishing the first element. *See United States v. Shipco General*, 814 F.2d 1011, 1014 (5th Cir. 1987) (holding that a default judgment is a judgment on the merits conclusively establishing a defendant's liability).

With respect to the inadequacy of remedies at law, as discussed above, Plaintiff's allegations establish that the Defaulting Defendants directly copied the subjects of Plaintiff's Registered Copyrights without authorization. The Defaulting Defendants' unauthorized and infringing acts have already caused immeasurable damage to Plaintiff, and the nature of the Defaulting Defendants' infringement—copying the subjects of Plaintiff's Registered Copyrights and selling Infringing Products using aliases and foreign accounts—suggests that, absent an injunction, they will remain free to continue doing so under further aliases. Without an enforceable injunction from this Court, Plaintiff would be forced to file further, identical copyright infringement actions in an effort to defend its Registered Copyrights. There is thus no adequate remedy at law, and the second factor also weighs in Plaintiff's favor.

The Defaulting Defendants suffer no harm from a permanent injunction—"they are merely stopped from doing something they cannot lawfully do"—so the third element is satisfied, as well. *F.M.D. Holdings*, 2021 WL 5883136 at *24. Plaintiff is entitled to protect the integrity of its intellectual property, and it continues to suffer hardship as long as the Defaulting Defendants are infringing its Registered Copyrights. The only hardship the Defaulting Defendants would face would be to simply cease using Plaintiff's Registered Copyrights.

The public interest factor also weighs in favor of an injunction because the public interest and the Copyright Act would be undermined if the Defaulting Defendants' improper conduct is allowed to continue. Permanently enjoining the Defaulting Defendants will therefore *advance* the public interest by protecting and enforcing copyright registrants' intellectual property while

maintaining the integrity of the Copyright Act. *See F.M.D. Holdings*, 2021 WL 5883136 at *24 ("given the egregious nature of the defendants' infringement and the need for free and *fair* competition, a permanent injunction is abundantly in the public interest" (emphasis in original)).

Notwithstanding the above test, the Copyright Act provides that courts may grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). A copyright holder therefore possesses "the right to exclude others from using his property." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006). A permanent injunction is thus also appropriate under the Copyright Act because only a permanent injunction will effectively restrain the Defaulting Defendants from further unlawful use of the Registered Copyrights.

Plaintiff therefore asks the Court to permanently enjoin the Defaulting Defendants from infringing Plaintiff's Registered Copyrights, and to order any further relief the Court deems just to restrain the Defaulting Defendants from causing further irreparable damage to Plaintiff.

### F.     Plaintiff is Entitled to Permanent Injunctive Relief Under the Lanham Act

Plaintiff additionally respectfully requests entry of a permanent injunction enjoining the Defaulting Defendants from continuing their infringing use of the Infringing Products pursuant to 15 U.S.C. § 1116. Under the Lanham Act, "[a] party seeking a permanent injunction must show: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *GS Holistic LLC v. Chaganis Props. LLC*, 2024 U.S. Dist. LEXIS 106885, at *33 (N.D. Tex. 2024). All four of these factors

also weigh in favor of granting a permanent injunction against the Defaulting Defendants under the Lanham Act.

In a dispute over trademark infringement, "when a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm. . . . The injury lies in the fact that the plaintiff no longer can control its own reputation and goodwill." *Liberty Burger Prop. Co. v. Liberty Rebellion Rest. Grp., LLC*, 2023 U.S. Dist. LEXIS 10325, at *16 (N.D. Tex. 2023). Plaintiff has therefore suffered irreparable injury, and thus satisfies the first element.

Second, because "the harm lies in damage to the trademark owner's reputation and inability to control the quality of services or products by the unauthorized user, the harm is difficult to pinpoint as compensable damages." *GS Holistic, LLC v. Kenny Gee's LLC*, 2024 U.S. Dist. LEXIS 18851, at *29 (N.D. Tex. 2024). Accordingly, Plaintiff has shown that damages alone are an inadequate remedy for Defaulting Defendants' actions, thereby satisfying the second element.

Third, when "balancing the harms to the plaintiff and defendant, courts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants." *Id*. That is the case here: any harm Defaulting Defendants suffer from being forced to stop using the Registered Mark and selling the Infringing Products is likely minimal when compared to the harm suffered by Plaintiff. Plaintiff is entitled to protect the integrity of its intellectual property, and it continues to suffer hardship as long as the Defaulting Defendants are infringing its Registered Mark. Plaintiff has therefore satisfied the third element.

"Lastly, courts are inclined to grant injunctive relief as within the public's interest—in such disputes over trademark and unfair competition—because the Lanham Act is intended to protect

the ability of consumers to distinguish among competing producers." *GS Holistic*, 2024 U.S. Dist. LEXIS 18851, at *29-30. As Defendants have hampered consumers' ability to distinguish between legitimate and counterfeit Plaintiff Products, injunctive relief is in the public interest. Plaintiff therefore satisfies the fourth element.

Plaintiff therefore asks the Court to permanently enjoin the Defaulting Defendants from infringing Plaintiff's Registered Mark, using and selling the Infringing Products, and to order any further relief the Court deems just to restrain the Defaulting Defendants from causing further irreparable damage to Plaintiff.

### CONCLUSION

Awarding statutory damages in this case deters the Defaulting Defendants and others from engaging in infringing conduct, compensates Plaintiff for such infringement, and admonishes the Defaulting Defendants for neglecting to participate in this litigation. This, in turn, promotes judicial efficiency and the just resolution of legal matters. An award of $350,000 for infringement of Plaintiff's Registrations further protects both Plaintiff's valuable intellectual property rights and the integrity of the Copyright Act and the Lanham Act. Plaintiff thus respectfully requests that the Court enter an order granting Plaintiff all of its damages pled herein, issue a permanent injunction enjoining the Defaulting Defendants from using the Registrations and selling the Infringing Products, and order that all assets in the Defaulting Defendants' Alibaba, AliExpress, Amazon, DHGate, eBay, Fruugo, Shein, Shopify, Temu, Walmart, or other bank or merchant accounts, as well as any newly discovered assets, be transferred to Plaintiff.

Dated: December 8, 2025

Respectfully submitted,

**SCALE LLP**

By: */s/ Charles A. Wallace*
Charles A. Wallace
Texas Bar No. 24110501
James H. Creedon
Texas Bar No. 24092299
3723 Greenville Ave., Suite 41010
Dallas, Texas 75206
Tel.      415.735.5933
Fax       415.573.0983
cwallace@scalefirm.com
jcreedon@scalefirm.com

ATTORNEYS FOR PLAINTIFF
LUCKY EGG LIMITED

## CERTIFICATE OF SERVICE

I certify that on December 8, 2025, I caused a true and correct copy of the foregoing document to be filed on the Court's CM/ECF system, which served notice on all counsel of record. The Defaulting Defendants were also provided notice on December 8, 2025, via email to all of the email addresses identified throughout discovery in this case.

By: */s/ Charles A. Wallace*
Charles A. Wallace

## CERTIFICATE OF CONFERENCE

None of the Defaulting Defendants have appeared in this case, and therefore, undersigned counsel states that he is unable to meet and confer with Defaulting Defendants and unable to state whether this motion is opposed.

*/s/ Charles A. Wallace*
Charles A. Wallace